DOROTHY D. CERVANTES, RESPONDENT, v. A. A. CERVANTES, JR., APPELLANT.—203 S. W. (2d) 143.

Springfield Court of Appeals. June 10, 1947.

*T. J. Borwin, Jr.,* and *W. Clifton Banta,* for appellant.

934

*Joslyn & Joslyn,* for respondent.

FULBRIGHT, P. J.—This is an appeal from an order of the Circuit Court of Mississippi County, Missouri, overruling appellant's motion to quash an execution theretofore issued at respondent's request.

It appears from the record that on September 4, 1945, respondent was awarded a decree of divorce from appellant, said decree being as follows:

"Now on this 4th day of September, 1945, and during the June Term, 1945, of said court, comes the plaintiff in person and by her attorney; also comes the defendant and said cause is submitted to the court upon the pleadings and proof and the court, after hearing the evidence herein, being satisfied that the plaintiff is the innocent and injured party and is entitled to the relief prayed for in her petition, doth order, adjudge and decree that she be and she hereby is absolutely and forever divorced from the bonds of matrimony existing between plaintiff and said defendant, and she is hereby restored to all rights and privileges of an unmarried person.

"It is further ordered and adjudged that the plaintiff have custody of the minor children: A. A. Cervantes, III and Cynthia Cervantes, subject to full rights of visitation on the part of the defendant.

"It is further ordered and decreed by the court that defendant pay to plaintiff for the care and maintenance of said children the sum of One Hundred Dollars ($100) per month from the date of this decree.

"The Court further finds that a property settlement has been entered into between the said parties, a copy of which settlement is attached hereto and made a part of this decree."

The property settlement is in words and figures as follows:

"This agreement, made this 16th day of August, 1945, by and between A. A. Cervantes, Jr., first party, and Dorothy D. Cervantes, second party:

"Witnesseth, that whereas, on the 18th day of May, 1935, the said parties were married in Mississippi County, Missouri, and lived together as husband and wife until the 11th day of May, 1945, and have on the last mentioned date separated and ceased to live with one another, and

"Whereas, a petition for divorce has been filed in the Circuit Court of Mississippi County, Missouri, by second party, and the parties being desirous of settling any and all property claims that they may have against the other.

"Now therefore, in consideration of the premises it is agreed between the parties that the second party shall have all the household goods and furniture and that the second party shall further have the sum of Eight Hundred Seventy-five Dollars ($875) upon terms to be agreed upon.

"It is further agreed between the parties that the first party shall pay to the second party for the maintenance and support of their minor children the sum of One Hundred Dollars ($100) per month from the date of the decree.

"It is further agreed between the parties that upon the entering of the decree the first party will release all claims and interest against the West Half of Section Twenty-five (25), "Township Twenty-Seven (27), Range Sixteen (16), Mississippi County, Missouri, which property now stands in the name of second party; and that second party will release all rights or interest that she might have or claim against the farm held in the name of first party and known as the Big Island Farm, consisting of 1351 acres and located in Scott County, Missouri."

The above instrument was duly signed by the parties.

It further appears that on the 4th of October, 1946, an amended execution was issued by the circuit clerk directing the sheriff to recover from said appellant the sum of $718.50, principal and interest, and costs in the amount of $7.30, and on the 10th day of October, 1946, counsel for appellant filed his motion to quash said amended execution.

As grounds for said motion, he states "that said execution is void for the reason that the monthly payments required to be made by virtue of a judgment dated September 4, 1945, in the case of Dorothy

D. Cervantes v. A. A. Cervantes, Jr., case number 2876, an action for divorce, said judgment providing therein that 'it is further ordered and decreed by the court that the defendant pay to the plaintiff for the care and maintenance of said children the sum of One Hundred Dollars ($100) per month from the date of this decree,' but by agreement between plaintiff and defendant have been reduced to the sum of Fifty Dollars ($50) per month, in accordance with which agreement defendant has paid to plaintiff the sum of $50 per month and is not now indebted to her.''

Thereafter, on the 7th day of November, 1946, a regular day of the October Term, 1946, said motion to quash the amended execution was taken up and submitted to the court, and after having seen and heard said motion made an order that same be overruled.

Appellant seeks to sustain his motion to quash upon the sole ground that the total sum due respondent has been paid. It was agreed between the parties that if the court found that the $50 agreement is binding the total sum has been paid.

No contention is made that the execution has been improperly issued, nor has the divorce decree been assailed in any manner. Moreover, defendant is not seeking to modify the judgment on which the execution herein was based.

The burden of sustaining the motion to quash rests upon appellant and since he pleads payment he must prove it. ''He is the movant of the motion to quash the execution and, in order to invoke the action of the court on the motion, it was incumbent upon him to produce evidence showing the payment of the judgment, . . . .'' Pflanz v. Pflanz, 177 S. W. (2d) 631, loc. cit. 635.

Section 1387, Revised Statute Missouri, 1939 (Mo. R. S. A.) provides that if any person against whose property any execution or order of sale shall be issued, apply to any judge of the court out of which the same may have been issued, setting forth good cause why same ought to be stayed, set aside or quashed, reasonable notice of such intended application having been previously given to the opposite party, the judge shall hear the complaint; and it is the duty of the judge to quash the execution if from the evidence it appears that the judgment has been fully paid. [State ex rel. Lane v. Montgomery, 223 Mo. App. 492, 17 S. W. (2d) 586; Pflanz v. Pflanz, supra; Woods v. Woods, 236 Mo. App. 855, 159 S. W. (2d) 320.]

The doctrine that a husband and wife may settle all property rights growing out of their marital relationship including the wife's right of dower and claim for alimony, support and maintenance, by a valid contract made in contemplation of separation and divorce seems to be well settled. [North v. North, 339 Mo. 1226, 100 S. W. (2d) 582, 109 A. L. R. 1061; State ex rel. Green v. James (Mo.), 195 S. W. (2d) 669, 673; Davis v. Davis, 196 S. W. (2d) 447.] But as we view these cases this doctrine has no application here. It will be noted

that the record indicates that the order and decree of the court requiring defendant to pay plaintiff $100 per month for the care and maintenance of the children is purely a result of the court's finding in the trial of the divorce proceeding and not merely an approval of the property settlement made by the parties prior thereto. After awarding the $100 per month for the care and maintenance of the children the decree states: "The Court further finds that a property settlement has been made and entered into between the said parties, a copy of which settlement is attached hereto and made a part of this decree."

An agreement as to the amount to be awarded as alimony or support and maintenance for the children is not a contract settling property rights, and an award made pursuant thereto in a divorce decree is an award of alimony for the wife or support and maintenance for the children, as the case may be, and for that reason is subject to further modification by the court. [North v. North, *supra*.]

It is made clear by the courts that any kind of property settlement made between the husband and wife will not in any way absolve the father from his responsibility for the care and maintenance of his minor children. [Kershner v. Kershner, 216 S. W. 547, loc. cit. 548.] The circuit courts are vested, as a matter of public policy, with supervisory jurisdiction of the care, custody and maintenance of such children, such custody and maintenance being open for variation and jurisdiction continues until the child has reached its majority. Furthermore, such orders and decrees of the court touching the maintenance of minor children may be modified at anytime after the decree of divorce is rendered upon the application of and proper showing made by either party. [Meyers v. Meyers, 91 Mo. App. 151; Guymon v. Guymon, 244 S. W. 965; Phipps v. Phipps, 168 Mo. App. 697, 154 S. W. 825; Thornton v. Thornton, 221 Mo. App. 1199, 2 S. W. (2d) 821; Laumeier v. Laumeier, 308 Mo. 201, 271 S. W. 481; Koenig v. Koenig, 191 S. W. (2d) 269; Mayes v. Mayes, 104 S. W. (2d) 1019 (which case was transferred to Supreme Court—see opinion, 342 Mo. 401).]

It must also be borne in mind that the award made by the court for the care and maintenance of the children was solely for their benefit. [Guymon v. Guymon, *supra*; Kershner v. Kershner, *supra*.]

For past support of minor children "committed to the mother by the court, and which is in the nature of a debt to her from "the husband, the wife and husband may make a compromise or contract which is binding on the wife in any action at law to recover for such past support. [La Rue v. Kempf, 186 Mo. App. 57, 67, 171 S. W. 588.] But as to the future support of the minor children, which can be taken care of only by a proceeding to modify the divorce decree, and which has regard for the welfare of the children only, neither the mother nor father, nor both combined, have any power by contract or agree-

ment to control the court's action." [Kelly v. Kelly, 47 S. W. (2d) 762, loc. cit. 768.]

Appellant was the only witness who testified in the proceeding. Concerning the purported agreement he testified in part as follows:

"Q. At this time you went to the house, was there any conversation with reference to reducing the $100 support and maintenance for the children? A. There was. There was a separate agreement between she and I that we would reduce it to $50 a month.

"Q. Do you know how long after the divorce that was? A. No, sir.

"Q. Was it in 1945? A. Yes, sir.

"Q. You stated it was agreed that she was to take $50 a month in place of $100? A. That is right. . . .

"Q. Did you pay her the $50 a month in accordance with the understanding you had at that time? A. I did.

"Q. Did she take that $50? A. She did.

"Q. When did you first understand from her that she refused any longer to take the $50 a month? A. The first I learned it was approximately in July, 1946.

"Q. Did you have a conversation with her at that time? A. I did.

"Q. Tell the Court the substance of that conversation. A. I told her at that time, 'I am figuring on getting married,' and I told her I wanted her to be the first one to know about it. She said, 'You are going to have to pay the $100 a month then.' "

Witness then identified a piece of paper as being a part of a letter received from his wife in January, 1946, from which we quote a part: "Since you haven't sent January's check, and February right at its heels, I was beginning to wonder if you were going back on our Fifty a month agreement instead of the Court's One Hundred."

Quoting further from appellant's testimony:

"Q. At the time of this purported agreement to reduce the money for care and maintenance to $50 a month, what was the reason back of that? A. For the reason I didn't have the money. . . . The reason for the reduction was she knew I couldn't afford it and didn't have the money to pay her $100 a month."

There is no evidence that at the time the purported oral agreement was entered into that appellant was delinqunt in his monthly payments for the care and maintenance of the minor children, as provided in the divorce decree. It may readily be inferred from the appellant's testimony that the purported agreement was entered into before the first monthly payment under the provisions of said decree became due. There is no testimony from which it may be inferred that the agreement was to compromise or settle past due installments or a then existing debt, but rather to reduce the future payments provided in said decree from $100 per month to $50 per month. Irrespective as to other reasons why the purported agreement may be invalid, it is for this reason absolutely void. The trial court, alone, has jurisdiction

and authority to modify or change the allowance for future maintenance of the children as provided in the decree. The procedure for modifying a divorce decree is well settled. Had appellant filed a proper motion for a modification of the decree, the court, upon a hearing and sufficient evidence having been presented, could have granted the relief sought.

It is our conclusion that the motion to quash was properly overruled. The judgment of the trial court is accordingly affirmed. *Blair, J.*, and *Vandeventer, J.*, concur.